Schaffer & Co. v. Forbes and Thompson—Baker, Garnishee; and Thompson v. Forbes—Baker, Garnishee.

No. 2907.—A. C. Schaffer & Co. v. John C. Forbes and Waddy Thompson—George Baker, Garnishee; and Waddy Thompson v. John C. Forbes—George Baker, Garnishee.

A person who has acted with other parties in an illicit enterprise, the object of which is to procure a false bill of lading for a cargo of cotton, and to destroy the vessel on which the cotton is to be shipped, for which such person has received a sum of money from the other parties, can not, when the other parties have absconded and an attachment has been taken out against them, and such person is made garnishee in attachment, set up that he received the amount of money from the conspirators in the fraud as a compensation for his services in enabling the creditors to ferret out the fraud, and thereby hold the same for his own benefit. To allow him to hold the amount thus received for his own benefit, would be to allow him to make a dishonest appropriation of the money of the debtor to the injury of the creditor.

APPEAL from the Fourth District Court, parish of Orleans. Théard, J. William H. Hunt and Semmes & Mott, for plaintiffs and appellees. A. & M. Voorhies, for garnishee, appellant.

Ludeling, J. C. Schaffer & Co. instituted suit against John C. Forbes, an absconding debtor, and Waddy Thompson, in solido, for $12,525 26, and George Baker was sued as garnishee.

There was judgment in favor of the plaintiffs, Schaffer & Co., against Forbes for $11,262 55, with privilege on the property attached. Subsequently it was agreed by the counsel of the plaintiffs in both of the above entitled suits and of George Baker that the two cases should be tried together as to the rights of the plaintiffs in the causes and the liability of George Baker. And on the twentieth May, 1870, there was judgment in favor of A. C. Schaffer & Co. against George Baker, garnishee, for the sum of four thousand dollars, with legal interest from judicial demand, the money, when collected by the sheriff, to be kept by him, subject to the order of the court a qua, until the rights of Waddy Thompson to the fund be decided in the case of Thompson v. Forbes and Baker, garnishee. From this judgment Baker alone has appealed.

The garnishee's answer to the interrogatories propounded is as follows: "That he owes nothing to Waddy Thompson or to J. C. Forbes; that he has nothing for them or either of them in his possession or under his control; that the four thousand dollars deposited by deponent is not the property of said Forbes or Thompson, or of either of them; and that said sum was paid over to him by Forbes as his (deponent's) share in an illicit enterprise contemplating the destruction of the ship C. C. Colson; that deponent did not implicate himself by any act or deed in this nefarious scheme, but acted all the time under the advice of several gentlemen with the view of ferreting out the fraudulent and criminal transaction, and was instrumental in exposing the whole matter to light and preventing the departure of the brig Colson. Further deponent saith not." The plaintiffs, Schaffer

& Co., traversed the answers of the garnishee, and they offered in evidence the published statement of George Baker relative to said transaction, in which he says.:

"About this time Forbes said to me, 'We understand each other now; that the vessel would be loaded with bogus freight; that bills of lading would be signed for more freight than would be put on her; that she would leave for Liverpool, where she would never arrive.' I replied evasively that there would be no trouble about that. Forbes said, 'I will give you $5000, $2500 on sailing and $2500 when you return. Go on and do this, and you shall never want for anything.' I then left and went to a friend, a merchant of high standing, and disclosed to him the whole plot. Before the papers arrived I was told to go to Waddy Thompson's office, and went there with him (Forbes). Mr. Thompson requested me to sign bills of lading for two hundred and fifty bales of cotton, saying he would give me a guarantee, which, he stated, was customary. I replied that I had signed bills of lading for small lots when satisfied; that they had been received, though I had not seen them, and that the signing would depend upon the guarantee. Thompson then turned to a clerk and ordered him to write out a guarantee for two hundred and fifty bales of cotton, which the clerk, a young man of about sixteen or seventeen years, did, signing the same, 'Waddy Thompson, per pro.' himself (I do not remember his name). It struck me as peculiar that Mr. Thompson did not sign it himself, and I left the office without signing. On returning in about half an hour, I told Thompson that it was impossible for me to sign the bills of lading until the bill of sale of the brig should arrive and she be properly turned over, as I would be making myself liable and subjecting my property to seizure.

"Just before the brig was cleared, however, Forbes took me into a private room in the Hancock Club and gave me four $1000 notes, saying that he was short and that he would give me the other $1000 some other time, and that he had just gotten the money from Waddy Thompson. He had previously told me that Thompson was one of the head men in the concern and that he (Forbes) was a bankrupt; all the proceeds of the cotton, etc., had to pass through Thompson's hands. I accepted the $4000, not wishing to appear anxious, as I had predetermined to turn it over to whoever might have the best claim upon it. Early the next morning I deposited the $4000 in the Bank of America in my name and reported the deposit to the underwriters. The plan as revealed by Forbes to me was, that I should take the Colson out and destroy her. He did not wish to hear from me for sixty or ninety days, in order to have plenty of time to make money arrangements. In conclusion, I would state that what I have done has been done solely with a view to bring to justice, if possible, a number of

men who have combined to perpetrate the grossest and most diabolical fraud, and whose acts are calculated to work injury to all classes of the mercantile community. I have the approval of my own conscience for the course I have pursued, and the testimony of the underwriters and my friends will sustain my statements, which were made as soon .after I possessed the facts as possible.

(Signed)                                    GEORGE BAKER."

And yet George Baker now claims the $4000 as his, and contends that he has earned it by giving his valuable time to ferret out the fraud contemplated by Forbes and Thompson. The pretext is too flimsy to require argument to show its unsoundness. If he received the money with the intention of appropriating it to himself, it was a fraud upon the parties negotiating with him for his services and a dishonest appropriation of the property of the debtor to the injury of the creditors, which the law will not allow.

We think the judgment against Baker correct.

It is therefore ordered and adjudged that the judgment of the district court be affirmed, with costs of appeal.

Rehearing refused.                                    ⁄